## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| Goldstar Emergency | § | CASE NO. 05-36446-H4-11 |
| Medical Services, Inc., | § | (Chapter 11) |
| Goldstar EMS, L.L.C., | § | |
| Goldstar EMS II, Inc., | § | (jointly administered) |
| Thomas Ambulance Service, Inc., | § | |
| Goldstar EMS IV, Inc., and | § | |
| Goldstar EMS South Texas, Inc. | § | |
| | § | |
| Debtors | § | |
| | § | |
| Goldstar Emergency | § | ADV. NO. <u>05-</u> |
| Medical Services, Inc., | § | |
| Goldstar EMS, L.L.C., | § | |
| Goldstar EMS II, Inc., | § | |
| Thomas Ambulance Service, Inc., | § | |
| Goldstar EMS IV, Inc., and | § | |
| Goldstar EMS South Texas, Inc. | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| V. | § | |
| | § | |
| Tricenturion, Inc. and | § | |
| Mike Leavitt, only in his capacity as | § | |
| Secretary of the United States Department | § | |
| of Health and Human Services | § | |
| | § | |
| Defendants | § | |

## VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, TO ENFORCE AUTOMATIC STAY, FOR RECOVERY UNDER 11 U.S.C. §525, TO ENJOIN DISCRIMINATORY APPLICATION OF ADMINISTRATIVE REVIEW <u>UNDER 11 U.S.C. §105, AND REQUEST FOR EMERGENCY HEARING</u>

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Comes now the Debtors/Plaintiffs Goldstar Emergency Medical Services, Inc., Goldstar

EMS L.L.C., Goldstar EMS II, Inc., Thomas Ambulance Service, Inc., Goldstar EMS IV, Inc.,

1

and Goldstar EMS South Texas, Inc., debtors and debtors-in-possession (collectively "Goldstar" or "Debtors") in their respective cases, who file this *Verified Complaint for Temporary Restraining Order, to Enforce Automatic Stay and Enjoin Discriminatory Application of Administrative Review Under 11 U.S.C. §105, for other damages, and Request For Emergency Hearing* (the "Complaint") and respectfully state as follows:

**SUMMARY**

1.      Previously, the United States had placed the Debtors on prepayment review performed by Tricenturion, a subsidiary of BlueCross BlueShield.  The "review" amounted to a termination of payment that shut down much of the Debtor's operations permanently and caused irreparable damage.   The United States agreed to a settlement read into the record and claims were to be processed as previous to the prepayment review.

2.      As of August 29, 2005, the Debtors are receiving virtually no money on any claims.  It appears 99% of claims are not being processed and paid.  Case law allows this Court to enjoin such "review" when it appears to be directed at putting the Debtors out of business instead of a regulatory goal.  Moreover, as the settlement with the United States was read into the record, the breach of that settlement is conduct that this Court has the inherent power to regulate directly.  Accordingly, the Debtors seek an injunction that requires claims processing to be done electronically as before prepayment review, and that the un-reviewed claims be paid pending further review.

3.      Finally, a contractor for FEMA has made demand for the Debtors' Ambulances. The Debtors are providing ambulances (of which the Debtors have an excess).  Because of a shortage of crews, contractors from other companies were located to operate the ambulances,

2

such that only four have been sent to New Orleans as of this point, though approximately 30 are available. If the prepayment review is not enjoined immediately, then no entity will exist to comply with FEMA demands.

## PARTIES

4.     The Plaintiffs are the above-captioned Debtors, Goldstar Emergency Medical Services, Inc., Goldstar EMS, L.L.C., Goldstar EMS II, Inc., Thomas Ambulance Service, Inc., Goldstar EMS IV, Inc., and Goldstar EMS South Texas, Inc.

5.     Defendant, Tricenturion, Inc. is Delaware corporation and an affiliate of Blue Cross and Blue Shield, licensed to do business in Texas. It may be served under Fed. R. Bankr. P. 7004 by sending a copy of the Summons, Complaint and Scheduling Order to its registered agent National Registered Agents, Inc. at 1614 Sidney Baker Street, Kerrville, TX 78028 by first class mail, postage prepaid. It may also be served by mailing a copy of the summons, complaint, and scheduling order to Barbara Gagel Tirone, Director 11212 Appaloosa Dr. Reisterstown, MD 21136.

6.     Defendant, Mike Leavitt, is sued only in his capacity as secretary of the United States Department of Health and Human Services ("HHS"). The Summons, Complaint and Scheduling Order may be served upon him by mailing a copy to the U.S. Attorney for the Southern District of Texas with a copy addressed to Mike Leavitt, Secretary, U.S. Department of Health and Human Services, 200 Independence Avenue, S.W. Washington, D.C. 20201.

## FACTUAL BACKGROUND

7.     Goldstar Emergency Medical Services filed for protection under Chapter 11 of the

3

Bankruptcy Code on April 25, 2005.  Goldstar EMS L.L.C. filed for protection July 11, 2005.

8.      Prior to the bankruptcy filing of Goldstar Emergency Medical Services, the Debtors had been investigated with regard to Medicare billings.  However, no prebankrutcy Medicare billings have been challenged as fraudulent and no allegations of fraud or improper billing have been leveled.

9.      Both before and after the petition date, the Debtors submitted claims for Medicare to the HHS fiscal intermediary, Trailblazer (a subsidiary of Blue Cross and Blue Shield). Trailblazer analyzed claims electronically and paid within 16 days.

10.     The Debtors averaged $50,000 to $80,000 a day in cash receipts from Medicare and Medicaid.  This is 70% of the Debtors' revenue.

11.     On June 3, 2005, after the bankruptcy petition was filed, HHS placed the Debtors on "prepayment review".  Trailblazer ceased reviewing billings, and instead billings were reviewed by Tricenturion, a different fiscal intermediary also owned by Blue Cross.  HHS gave no reason for this review.  The only legal change in circumstances to precipitate the conversion was the existence of the bankruptcy.

12.     "Prepayment review" proved to be a stone wall.  When prepayment review started on June 3, 2005, the Goldstar-related entities had submitted 3528 claims.  Of these, 1080 claims had been denied and 2383 were yet to be reviewed.  Claims were rejected for little or no stated reason.  When reasons are given, the reasons are vague fragments -- "not medically necessary" or "improper modifiers".

13.     The Debtor's claims in process for the Month of July are summarized as follows:

4

| | |
|---|---|
| Total Claims Reported as Processed since June 3rd on EOB's = | 3097 |
| Total Claims submitted for processing since June 3rd = | 3528 |
| Total Claims Denied since June 3rd = | 1080 |
| Percentage of Claims reviewed that were denied = | 99.9816% |
| Total Claims in the Processing Hopper as of 07/12/05 | 2,383 |

14.     The Debtors sought an explanation for weeks.  Finally, On July 11, 2005, the Debtors sent representatives to the Dallas office of Tricenturion.  No one was willing to speak with them.  On July 12, 2005, the Debtors held a conference call between Tricenturion, the U.S. Attorney, and counsel.  Even when the U.S. Attorney requested that Tricenturion explain a handful of claim rejections, they refused.

15.     The outright denial of claims (some based upon 9-1-1 calls) cut off 70% of the Debtors' cash flow and caused the Debtors to take drastic action to preserve the company. Moreover, unless the unprocessed claims are processed and the claims allowed on a reasonable basis, the Debtors face swift and sure financial ruin.

16.     As a result, the Debtors instituted suit against Tricenturion and the United States. The United States announced its agreement that bound both the United States and Tricenturion, its fiscal intermediary.  That settlement was also documented in an e-mail between counsel reprinted below:

This is to memorialize our compromise in lieu of the TRO hearing on Monday morning, July 18, 2005.

- This compromise applies to the Debtors and all of their affiliates.

- The government and Tricenturion agree to remove all non-dialysis transport claims from prepayment review.  With respect to claims which have already been filed, we have agreed as follows:
    - o   All claims that already have been denied, will be dealt with through the normal appeals process.
    - o   Commencing Monday morning, July 18, 2005, all claims pending prepayment review will be sorted into dialysis transports and others.  As the claims are sorted, Tricenturion will send claims in the "other" category to Trailblazer for payment.
    - o   All dialysis transport claims will remain subject to prepayment review  by Tricenturion.

- o  On a daily basis, commencing Monday July 18, 2005, Tricenturion will submit a report to Goldstar listing the claims transmitted to Trailblazer for payment.

- With respect to new claims which will be submitted by Goldstar beginning July 18, 2005, the following procedure shall apply:

  - o  All claims shall be submitted to Trailblazer electronically and to Tricenturion in paper form.

  - o  Trailblazer will process all non-dialysis transfer claims without prepayment review in the normal course.

  - o  All new dialysis transport claims will remain subject to prepayment review by Tricenturion.

- The hearing on the TRO/Injunction shall be continued to Wednesday morning, July 20, 2005, at 11:00 a.m. to determine compliance by Tricenturion and the government with the foregoing procedures.

- The compromise does not prohibit the Debtors from seeking any relief at the continued hearing and does not prevent the government or Tricenturion from contesting the relief sought.

Settlement E-mail attached as Exhibit "A".

17.    Then, the claims process slowed and stopped.  The Debtor's claims for the Month of August are summarized as follows:

| Date | Approved/Processed | Amount | Avg | Pending # |
|------|-------------------:|--------|-----|-----------|
| 15th | 149 | $42,532 | $285 | 1433 |
| 16th | 18 | $3,782 | $210 | 1839 |
| 17th | 115 | $14,192 | $123 | 1963 |
| 18th | 234 | $52,418 | $224 | 1987 |
| 19th | 173 | $37,473 | $216 | 2036 |
|  |  |  |  |  |
| 22nd | 172 | $37,011 | $215 | 2120 |
| 23rd | 128 | $29,347 | $229 | 2085 |
| 24th | 273 | $76,213 | $279 | 2097 |
| 25th | 187 | $24,035 | $128 | 2117 |
| 26th | 168 | $23,430 | $139 | 2140 |
|  |  |  |  |  |
| 29th | 32 | $2,772 | $71 | 2255 |
| 30th | 24 | $1,235 | $51 | 2353 |

18.    The Debtors have learned from Malcolm Bales, Assistant U.S. Attorney for the Eastern District of Texas, that the Debtors either are or soon will be placed back on 100%

prepayment review, with the result that nearly 100% of submitted claims will not be paid.  The delay in claims processing is not without deliberation.  No notice was given to the Debtors of the decision to cease paying claims.  The Debtors first became aware of the denial of claims on August 30, 2005.

19.     The Debtors immediately contacted the local United States Attorney, Judy Robbins, regarding the breach of the agreement.[1]  She denied that any prepayment review or suspension had occurred.  The Debtors only know that they were told the Debtors were not on prepayment review, but that they have received almost no Medicare payments in the past two days and, as a result, the Debtors are days away from shutting its doors.

20.     This Court can summarily enforce settlement agreements made before it.  *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir., 1984); *Strange v. Gulf and South American Steamship Company*, 495 F.2d 1235, 1237 (5th Cir.1974).  The Court is thus entitled to enforce the agreement of counsel made before it that settled the case.

## JURISDICTION AND LEGAL AUTHORITY

21.     This Court has jurisdiction by virtue of 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §105(a).  This matter is a core proceeding.   Venue is proper in this district pursuant to 28 U.S.C. 1408 and 1409.  Jurisdiction over the nondebtor affiliates is proper under the Fifth Circuit's holding of *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995).

22.     Section 525 of the Bankruptcy Code contains a blanket waiver of sovereign immunity of governmental entities and imposes a broad prohibition on states revoking licenses, permits, or other action to discriminate against a debtor or person affected by a debtor.

---

[1] E-mail Attached as Exhibit "B".

23.     Section 105 of the Bankruptcy Code authorizes this Court to enter orders to enforce the provisions of the bankruptcy code.  Section 106 likewise contains a blanket waiver of sovereign immunity for certain bankruptcy proceedings.

24.     Section 362(a) of the Bankruptcy Code prohibits actions to take control of property of the estate without court approval.  There exists a "police power" exception in Section 362(b)(4), that is limited to enforcement of regulations for a regulatory purpose, not a pecuniary purpose.

25.     In *Richmond Paramedical Svcs., Inc.  v. United States Dept. of Health and Human Svcs. (In re Richmond Paramedical Svcs., Inc.)*, 94 B.R. 881 (Bankr. E.D. Va. 1988), the court faced a decision more serious than this one.  The debtor had been <u>convicted</u> of criminal offenses relating to Medicare services.  However, the immediate exclusion of the debtor from the Medicare program would have damaged both patients and creditors.  Accordingly, under Section 105, the court enjoined HHS from suspending the debtor from the Medicare program pending sale of the company to a qualified unrelated entity.  *Id. a*t 886.

26.     In the markedly similar case of *Medicar Ambulance Co., Inc. v. Shalala (In re Medicar Ambulance Co., Inc.)*, 166 B.R. 918 (Bankr. N.D. Cal. 1994), the court dealt with an ambulance company.  The ambulance company was placed into suspense by HHS and its fiscal intermediary, Blue Cross Blue Shield.  Unlike here, where there is merely an investigation, in *Medicar,* the ambulance company was accused of fraudulent billing.  While acknowledging that substantial deference is ordinarily given to the HHS, and that bankruptcy is not a panacea, the court enjoined the administrative suspension.  *Id.* at 922-923.  The injunction issued under the provisions of the automatic stay and section 105.  The Court issued the injunction by noting the

public policy concerns in favor o the injunction 1) that Medicare provide care to the elderly and 2) that creditors receive distributions, outweigh the competing policy in favor of deference to HHS. *Id.* at 925. Specifically, if the suspension were allowed to remain:

> "the bankruptcy goals would be eviscerated . . . and Medicare would become a preferred creditor. The Medicare goals of deterring fraud would only be achieved at the price of potentially eliminating a health care supplier from the marketplace before a final determination of overpayment is reached.

*Id.* at 925.

27.     In *First American Health Care of Georgia, et al. v. Shalala (In re First American Health Care of Georgia, et al.)*, 208 B.R. 985 (Bankr. N.D. Ga. 1996) vacated on other grounds 1997 U.S. Dist. LEXIS 21980, the court required HHS and Blue Cross to make Medicare payments notwithstanding the <u>indictment</u> of the Debtor's offices for fraudulent billing. The HHS had suspended "PIP" payments for the care of over 32,000 home-bound patients. The Court found that such a suspension violated the automatic stay because the withheld payments were property of the estate. *Id.* at 992. Even if some money was overpaid, <u>some</u> claims were valid and the money owed on those valid claims was property of the estate that cannot be withheld in violation of the stay. *Id.*

28.     In *Advanced Professional Home Health Care, Inc. v. Blue Cross and Blue Shield of Michigan and Shalala, et al*, 82 B.R. 837, 843-44 (Bankr. E.D. Mich. 1988), the court found that the withholding by Blue Cross and HHS of interim Medicare payments was a violation of the automatic stay. HHS argued that it was merely recouping overpaid funds. The Court disagreed and ordered the funds to be paid to the Debtor, awarding legal fees for the stay violation.

## Count 1 – Breach of Settlement Agrement

29.     Exhibit "A" is the settlement read into the record in open court.  The Court may enforce the settlement summarily - without a trial.  The failure to comply with the settlement is the failure to honor representations made to this Court and may be dealt with by this Court.  *See, E.g., Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir., 1984); *Strange v. Gulf and South American Steamship Company*, 495 F.2d 1235, 1237 (5th Cir.1974).

30.     Moreover, as noted in *In re Paolino*, 78 B.R. 85, 88 (Bankr. E.D. Penn. 1987), a "settlement agreement as read into the record in open court...constitutes a valid, binding and enforceable settlement agreement." "An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." Id. at 89.

31.     The settlement with the United States was binding.  It was broken.  The Court may order specific performance to enforce the agreement or enter an injunction.  The Debtors have suffered damages that entitle it to an injunction.  As the Fifth Circuit noted in *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro*, 875 F.2d 1174, 1178 (5th Cir. 1989), monetary damages justify an injunction "where the potential economic loss is so great as to threaten the existence of the movant's business." *Atwood Turnkey*, 875 F. 2d at 1179.

32.     Regardless of the merits of the first suit, the suit was settled and an agreement announced.  This court may summarily enforce the agreement against the United States, and enter any injunction appropriate to prohibit the disintegration of the Debtors' ambulance business.

33.     The failure to pay the Debtor is damaging the Debtor in the amount of $35,000

10

per day.  The court may order, as a civil contempt sanction, that the United States pay the Debtor

$35,000 per business day that the claims are not processed.

### Count 2 - Automatic Stay Violation

34.    The Automatic Stay of 11 U.S.C. §362 acts as a federal court order to "any entity"

prohibiting that entity from attempting to collect a prepetition debt or taking action against the

property of the estate.  The stay applies to governmental entities as well, with specifically

enumerated exceptions.

35.    Under section 541(b)(7), interests in property acquired after the bankruptcy are

property of the estate.  The Court in *First American Health Care*, supra, determined that the

money withheld on valid claims was property of the estate was wrongfully withheld in violation

of the stay.

36.    Courts have consistently held that a party's failure to turn over property of the

estate in its possession is a violation of the automatic stay. As the Honorable Adlai S. Hardin, Jr.

recently stated:

> This Court agrees with those decisions holding that refusal to turn over property
> of a debtor's estate to the debtor upon demand constitutes an "exercise of control"
> over the debtor's property within the scope of Section 362(a)(3).

*In re Metromedia Fiber Network Servs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.)*,

290 B.R. 487, 488 (Bankr. S.D.N.Y. 2003); see *STMIMA Corp. v. Carrigg (In re Carrigg)*, 216

B.R. 303 (B.A.P. 1st Cir. 1998) ("the creditor's refusal to voluntarily turn over property of the

estate to the debtor after it had notice of the bankruptcy constitutes yet another willful violation

of the stay"); *California Empl. Dev. Dep't v. Taxel (In re Del Mission)*, 98 F.3d 1147 (9th Cir.

1996) (holding that the state's continued retention of and failure to turnover disputed taxes was a

violation of the stay; "[t]o effectuate the purpose of the automatic stay, the onus to return estate property is placed upon the possessor; it does not fall on the debtor to pursue the possessor."); *Knaus v. Concordia Lumber Co. (In re Knaus )*, 889 F.2d 773, 775 (8th Cir. 1989) ("The duty [to turn over property of the estate] arises upon the filing of the bankruptcy petition. The failure to fulfill this duty, regardless of whether the original seizure was lawful, constitutes a prohibited attempt to 'exercise control over the property of the estate' in violation of the automatic stay. "); *Expenditures Int'l of Washington, Inc. v. Colortran, Inc. (In re Colortran, Inc.)*, 210 B.R. 823 (B.A.P. 9th Cir. 1997), aff'd in part and vacated in part on other grounds, 165 F.3d 35 (9th Cir. 1998) ("A creditor who fails to return the estate's property after it knows of the debtor's bankruptcy is subject to sanction for willful violation of the automatic stay. "); *Foust v. Seal (In re Foust)*, No. 98-50774 SEG, 2000 Bankr. LEXIS 1146, at *18-19 (Bankr. S.D. Miss. July 18, 2000) ("This court agrees with other courts that have held that postpetition retention of estate property without court authority following a prepetition seizure constitutes an exercise of control over property of the estate and is a violation of the automatic stay"); *In re Carlsen*, 63 B.R. 706 (Bankr. C.D. Cal. 1986) ("After learning of the bankruptcy, the I.R.S. had the choice of returning the check to the County, for it had received it in violation of the automatic stay, or turning the money over to the trustee as property of the estate. The failure of the I.R.S. to take either of these actions is in violation of both the Automatic Stay and of the turnover requirements of the Bankruptcy Code.").

37.     The actions of HHS and Tricenturion violate the automatic stay because the Debtors have submitted valid claims.  Whatever hypertechnical reason is being applied to reject 100% of the claims is a pretext.  There is money owed and that money is property of the bankruptcy estate.  Moreover, the exercise of control over estate property is willful and made by

an entity represented by counsel who is aware of the bankruptcy.

38.    The Debtors and their patients have been injured by the stay violation.   The Debtors are also entitled to an order enforcing the Automatic Stay and imposing such remedies as are appropriate to enforce the Automatic Stay as it has the force of a federal court order.  See *In re Stephen W. Grosse, P.C.*, 84 B.R. 377, 382 (Bankr. E.D. Pa. 1988) ("For deliberate and willful violations of the automatic stay constituting civil contempt, compensatory damages as well as costs and attorneys fees are appropriate relief, even absent the operation of 11 U.S.C. §362(h). This court has the power subject to Bankr. Rule 9020 to remedy civil contempt."); *In re Power Recovery Sys., Inc.*, 950 F.2d 798, 802 (1st Cir. Mass. 1991) (imposing civil contempt fine in the amount of $1,000 for each day defendant continued not to comply with order); *In re Ionosphere Clubs Inc.*, 171 B.R. 18, 21 (S.D.N.Y. 1994) (rejecting appellant's argument that bankruptcy court's imposition of $750 per day sanction was improper and concluding that it was imposed to "compel Bartel to stop violating the automatic stay and to desist from further violations"); *In re McLean Indus., Inc.*, 68 B.R. 690, 701 (Bankr. S.D.N.Y. 1986) (finding defendant in civil contempt for violating automatic stay and restraining order and fining defendant $5,000 for each day it failed to comply with order).

### Count 3 - Injunction

39.    Under Fed. R. Bankr. P. 7065, the Debtors are entitled to seek a restraining order and injunction without the necessity of posting a bond.  Under 11 U.S.C. § 105 the Court has the authority to enjoin actions that interfere with this Court's jurisdiction or that impermissibly hinder the Debtors' efforts to reorganize.

40.    Section 105(a) of the Bankruptcy Code authorizes this Court to "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."[2]   Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets.[3]

### The Debtors Satisfy the Standard For Ordering a Section 105(a) Injunction

41.     Under the common law, a party seeking an injunction must show:

(1) irreparable harm that cannot be adequately addressed by monetary damages (or the nature of the monetary harm threatens the very existence of the business);

(2) a strong likelihood of success on the merits;

(3) balancing of the harm to all parties; and

(4) whether the injunction comports with public policy

42.     Courts within the Fifth Circuit have applied this standard to section 105 injunctions.[4]

43.     **Irreparable Harm**   As explained above, the Debtors have clearly established irreparable harm.  Losing all of one's cash flow is very harmful.  The Debtors have been forced to make cutbacks and to terminate service in some areas abruptly.  The Debtors (and affiliates) will not be able to resume service once their 9-1-1 contracts have been cancelled.  The prior interruption decimated the Debtor, even though an agreement was reached.  This time the harm to the Debtors is even clearer.  On the other hand, HHS and Tricenturion, without officially

---

[2] 11 U.S.C. §105(a).

[3] *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."). *See also Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("[T]he Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

terminating the Medicare provider contract, have rendered it impotent by denying nearly all claims for discretionary or pretextual reasons.

44.     **Monetary Remedy not Enough**   The loss to the Debtors is not reparable by monetary payments in the distant future.  Unless the claims are processed now, the Debtors will have insufficient funds to operate.  Even if monetary damages are sufficient, an exception to the general rule exists "where the potential economic loss is so great as to threaten the existence of the movant's business"  *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro*, 875 F.2d at 1179 (5th Cir. 1989).

45.     **Likelihood of Success**.   The likelihood is that the Debtors will succeed in showing that their claims are overwhelmingly valid, or that the United States breached its agreement.  The claims often result from 9-1-1 calls.  HHS and Tricenturion have not shared their reasons for rejecting to these claims.  The United States can bind its fiscal intermediary.

46.     **Balancing of Harms**   The balancing of harms weighs in favor of the Debtors and the people it serves.  The Debtors and their related entities have been effectively cut off.  The harm to the public at large is severe.  Goldstar recently pulled out of Port Arthur's 9-1-1 service.  Without funds, Goldstar will not survive.  On the other hand, the risk to the government is that it will overpay a claim.  That risk can be managed.  The Bankruptcy Code contains a number of safeguards against fraudulent conduct by debtors.   Moreover, HHS can seek *post-hoc* review of the claims.

47.     **Public Policy**   Public policy supports the injunction, as noted by the court in *Medicar*, supra.  The goal of the bankruptcy code is to pay creditors fairly.  That goal is

---

[4] *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995).

frustrated by allowing HHS to essentially obtain free ambulance service by denying all claims. Even the public policy behind the HHS – supporting the well being of the people – is frustrated by allowing the action suggested herein. While there is a public policy that one should generally give deference to the HHS, that policy is outweighed by the policy of ratable distribution and public safety.

## Count 4 -  Section 525

48.    The denial of claims on administrative review seems based on the Debtors' bankruptcy. HHS has articulated no fraud, found no illicit conduct or overpayments, to justify placing the Debtors and their affiliates on administrative review. 11 U.S.C. §525 provides a protection against such action and allows for the recovery of damages.

## Verification and Request for Expedited Hearing

49.    Attached as Exhibit "C" is the verification of John Brian stating the basis of the emergency relief needed and verifying the factual basis of the relief sought, that the continued refusal of Tricenturion and HHS to deal forthrightly and honor claims is irreparably impairing the Debtors' reorganization efforts.

50.    The Debtors need an emergency hearing on this matter and asks that the matter be set for hearing on September 2, 2005.

## Conclusion/ Prayer

51.    The Debtors request that the Court issue a Temporary Restraining Order and Injunction against HHS and Tricenturion:

1)    Requiring that the United States and Tricenturion obey the agreement announced into the record, and that Defendant to re-examine the denied claims

16

electronically and pay those that are not rejected for *bona fide*[5] reasons within 5 days,

     2) requiring Defendants to release all claims that have been previously approved electronically by Trailblazer, but suspended for payment pending prepayment review by Tricenturion and pay the previously approved claims by wire transfer within 3 days, (Tricenturion may demand adequate protection for such claims as are in *bona fide* dispute),

     3) restraining Defendants from suspending or withholding or refusing payment on future claims unless, concomitant with the objection, they provide full and complete details concerning the reasons for the objection and the objection is *bona fide*, and

     4) restraining Defendants from delaying or rejecting claims without *bona fide* reasons.

The Debtors also seek a preliminary and permanent injunction, an order that HHS and Tricenturion obey their prior agreement and show cause why they should not be held in contempt, and award the Debtors punitive and actual damages and legal fees and costs in an amount to be determined. The Debtors seek an order compelling the Defendants to enforce the prior settlement, and, to the extent the Defendants refuse to honor the settlement, ordering the

[this space intentionally blank]

---

[5] *Bona Fide* is defined herein to mean a dispute based on something other than a technical infirmity with the submission and one in which there is no objection to "modifiers" or "medical necessity", unless full and complete details of the objection to the medical necessity are given to the Debtors concurrently with the objection, setting forth the reasons that the specific service was not medically necessary.

Defendants to pay $35,000 per day for each day that the claims are not timely and properly processed.

Dated:  August 31, 2005.

Respectfully submitted,

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: _____
EDWARD L. ROTHBERG
State Bar No. 17313990, Fed. I.D. No. 2780
HUGH M. RAY, III
State Bar No. 24004246, Fed. I.D. No. 22090
MELISSA A. HASELDEN
State Bar No. 00794778,  Fed. I.D.  No. 19704.
Eleven Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone:     713.961.9045
Facsimile       713.961.5341

ATTORNEYS FOR PLAINTIFFS/DEBTORS

## CERTIFICATE OF SERVICE

While the Complaint will be served with the summons and scheduling order in compliance with Fed. R. Bankr. P. 7004, I further certify that a true and correct copy of the foregoing document has been forwarded by fax and first class mail, postage pre-paid, and/or by e-mail, on August 31, 2005, to the Defendants at the addresses shown below:

Tricenturion, Inc.
c/o National Registered Agents, Inc.
1614 Sidney Baker Street
Kerrville, TX 78028

Tricenturion, Inc.
3050 Post Oak Boulevard
Houston, TX 77056

Tricenturion, Inc.  (via overnight mail)
Barbara Gagel Tirone,  Director
11212 Appaloosa Dr.

Reisterstown, MD 21136

Tricenturion, Inc.  (via overnight mail)
7909 Parklane Rd.
Suite 190
Columbia, SC 29223
Fax: 803-264-7788

Mike Leavitt, Secretary,
U.S. Department of Health and Human Services
200 Independence Avenue

18

S.W. Washington, D.C. 20201

Civil Process Clerk
of United States Attorney's Office
P O Box 61129
Houston, TX 77208

Alberto Gonzales
Attorney General of the United States
950 Pennsylvania Avenue, NW Room 4400
Washington, DC  20530-0001

Judith Robbins, by e-mail
Judy.robbins@usdoj.gov

HUGH M. RAY, III

**Hugh M. Ray, III**

| | |
|---|---|
| **From:** | Edward Rothberg |
| **Sent:** | Friday, July 15, 2005 5:53 PM |
| **To:** | 'Judy.Robbins@usdoj.gov' |
| **Cc:** | Larry Cauthen; Hugh M. Ray, III; Melissa A. Haselden; 'John Brian' |
| **Subject:** | Goldstar/CMS/Tricenturion Agreement |
| **Attachments:** | Edward Rothberg.vcf |

This is to memorialize our compromise in lieu of the TRO hearing on Monday morning, July 18, 2005.

- This compromise applies to the Debtors and all of their affiliates.
- The government and Tricenturion agree to remove all non-dialysis transport claims from prepayment review.  With respect to claims which have already been filed, we have agreed as follows:
  - All claims that already have been denied, will be dealt with through the normal appeals process.
  - Commencing Monday morning, July 18, 2005, all claims pending prepayment review will be sorted into dialysis transports and others.  As the claims are sorted, Tricenturion will send claims in the "other" category to Trailblazer for payment.
  - All dialysis transport claims will remain subject to prepayment review  by Tricenturion.
  - On a daily basis, commencing Monday July 18, 2005, Tricenturion will submit a report to Goldstar listing the claims transmitted to Trailblazer for payment.
- With respect to new claims which will be submitted by Goldstar beginning July 18, 2005, the following procedure shall apply:
  - All claims shall be submitted to Trailblazer electronically and to Tricenturion in paper form.
  - Trailblazer will process all non-dialysis transfer claims without prepayment review in the normal course.
  - All new dialysis transport claims will remain subject to prepayment review  by Tricenturion.
- The hearing on the TRO/Injunction shall be continued to Wednesday morning, July 20, 2005, at 11:00 a.m. to determine compliance by Tricenturion and the government with the foregoing procedures.
- The compromise does not prohibit the Debtors from seeking any relief at the continued hearing and does not prevent the government or Tricenturion from contesting the relief sought.

Best regards,

Edward L. Rothberg
Board Certified in Business Bankruptcy
Texas Board of Legal Specialization
Direct Dial:  (713) 341-1159

Weycer, Kaplan, Pulaski & Zuber, P.C.
11 Greenway Plaza, Suite 1400
Houston, TX  77046
Main: (713) 961-9045
Email: elr@wkpz.com
Web Address: www.wkpz.com

This communication and any attachments to it are confidential and intended solely for the use of the person to whom they are addressed. This e-mail transmission may contain confidential information that is legally privileged. If you have received this e-mail in error, please notify us by telephone immediately at (713) 961-9045, and you are notified that any disclosure, distribution, or the taking of any action in reliance on the contents of this information is prohibited. Unless expressly stated, nothing in this message should be construed as a digital or electronic signature of any employee of Weycer, Kaplan, Pulaski & Zuber, P.C.



## Hugh M. Ray, III

| | |
|---|---|
| **From:** | Edward Rothberg |
| **Sent:** | Tuesday, August 30, 2005 5:48 PM |
| **To:** | 'Judy.Robbins@usdoj.gov' |
| **Cc:** | 'Larry Cauthen'; Hugh M. Ray, III |
| **Subject:** | Goldstar Urgent |
| **Attachments:** | Edward Rothberg.vcf; 0377827.XLS |

From the date our settlement was announced in open court until a few days ago the process with Medicare was working very smoothly.  However, on August 29 and 30 the dollar value of the claims dropped dramatically and the number of pending claims rose dramatically.  Attached is a spreadsheet showing the payments made by Medicare to Goldstar over the last few weeks.  As you can see the payments averaged around $35k per day.  On 8/29 the payment was $2772 and on 8/30 the payment was $1235. Based on claims allowed today, it look like the payment for tomorrow will be about $1k.  This is the same pattern which occurred when the company was put on prepayment review.  Goldstar has not been notified by anybody  that prepayment review has been re-instituted.  However, Tri-Centurion has not returned any calls.  Also, the attorney handling the criminal investigation (Lum Hawthorn) was told that Tri-Centurion was unhappy about reviewing only the dialysis claims and that they wanted to reinstitute the full prepayment review.

Can you check with your client and see if prepayment review or some other mechanism to deny or hold claims has been instituted?  If not, we need some explanation  As you know, we have to submit budgets to the court and the creditors where we estimate cash receipts.  If Medicare is going to hold claims again, we will have to reduce these estimates and at this point it will probably be the death of the company.  We have our regular complex hearing date tomorrow.  Judge Bohm always wants to know the status of the business.  I feel like I will have to report that the cash flow is being interdicted and that we might have to re-file our complaint unless we can figure out the problem and try to resolve it.

Your help would be greatly appreciated.

Best regards,

Edward L. Rothberg
Board Certified in Business Bankruptcy
Texas Board of Legal Specialization
Direct Dial:  (713) 341-1159

Weycer, Kaplan, Pulaski & Zuber, P.C.
11 Greenway Plaza, Suite 1400
Houston, TX  77046
Main: (713) 961-9045
Fax: (713) 961-5341
Email: elr@wkpz.com
Web Address: www.wkpz.com

This communication and any attachments to it are confidential and intended solely for the use of the person to whom they are addressed. This e-mail transmission may contain confidential information that is legally privileged. If you have received this e-mail in error, please notify us by telephone immediately at (713) 961-9045, and you are notified that any disclosure, distribution, or the taking of any action in reliance on the contents of this information is prohibited. Unless expressly stated, nothing in this message should be construed as a digital or electronic signature of any employee of Weycer, Kaplan, Pulaski & Zuber, P.C.

The IRS does not allow the use of informal tax advice, such
as this email, to avoid tax penalties



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In Re: | § | |
| | § | |
| Goldstar Emergency | § | CASE NO. 05-36446-H4-11 |
| Medical Services, Inc., and | § | (Chapter 11) |
| Goldstar EMS, L.L.C. | § | 05-40738-H5-11 |
| | § | (Chapter 11) |
| Debtors | § | |
| | § | |
| Goldstar Emergency | § | ADV. NO._ |
| Medical Services, Inc., *et al* | § | |
| | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | |
| Tricenturion, Inc. and | § | |
| Mike Leavitt, only in his capacity as | § | |
| Secretary of the United States Department | § | |
| of Health and Human Services | § | |
| | § | |
| Defendants | § | |

## VERIFICATION OF JOHN BRIAN
## IN SUPPORT OF EMERGENCY CONSIDERATION

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that:

I am an EMS Specialist for both Debtors, Goldstar Emergency Medical Services, Inc. and Goldstar EMS, L.L.C. I have run my own ambulance company for 17 years, and am currently the Vice President of the Texas Ambulance Association (though I am not speaking now on behalf of the Association). I have reviewed the proposed verified complaint and am familiar with the facts at issue. I have personal knowledge of the facts stated therein (except for the information relating to agents of process for the Defendants). I went to Dallas to try and meet with Tricenturion and discuss their objections, but they refused to meet with me. I have tried on numerous occasions to discover the details of their objections. I certify that the facts contained in the Complaint are true and correct. I am aware of the settlement that was reached and I know that the Medicare payments have stopped.

Dated: 8/31/05

_John Brian_

EXHIBIT
C